IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY PADILLA o/b/o
SALLY PADILLA, deceased,

      Plaintiff,

vs.                                            Civ. No. 00-937 JC/DJS

LARRY G. MASSANARI, Acting
Commissioner of Social Security,[1]

      Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding the

---

[1] Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for William A. Halter, Acting Commissioner, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

  2. Plaintiff applied for Title II disability benefits on September 29, 1994.  Tr. 53.  Her application was denied initially and on reconsideration.  Tr. 86 and 94.  The Appeals Council denied her request for review.  Tr. 3-4.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

  3. Ms. Padilla was born on January 26, 1944 and was 40 on her alleged disability onset date and 46 on her date-last-insured.  Tr. 72.  She had a seventh grade education.  She was literate and able to communicate in English.  <u>Id</u>.  Her past relevant work was as an electronics assembler.  <u>Id</u>.

**Issues**

  4. Plaintiff alleges the ALJ made three errors. Specifically Plaintiff claims that: (1) the ALJ did not properly infer the onset date; (2) the ALJ did not properly weigh the vocational evidence; and (3) the ALJ erred in his credibility finding.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612

F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.  Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by

incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

    9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225

(10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  In reviewing the record the Court fully recognizes that the facts of this case are sad.  Ms. Padilla died at a young age from a devastating disease.  However, the law and regulations governing social security appeals do not allow her survivors to recover any disability benefits.  In reviewing the comprehensive opinion of the ALJ, the record, and the pleadings the Court finds that the findings and conclusions of the ALJ are supported by the substantial evidence and that the ALJ applied the correct legal standards.  There is no error.

11.  The following dates are important.  Ms. Padilla filed her application under Title II on September 29, 1994, alleging an inability to perform any work since an on-the-job injury to her back on November 2, 1984.  Tr. 80, 81 and 104.  She had disability insured status on November 2, 1984.  She continued to have disability insured status until December 31, 1990.  20 C.F.R. Sec. 404.130(1997).  Thus, to establish entitlement to disability benefits, Ms. Padilla must have a disability that began on or before December 31, 1990.

12.  Further, the law requires that a claimant must file her application no later than 12 months after any possible period of disability ends.  42 U.S.C. Secs. 416(i)(2)(E) and 423(b); 20 C.F.R.

Secs. 404.315(a)(3) and 404.320(b)(3).  Thus, if Ms. Padilla had a disability which ended prior to September 1993, then there is no recovery of benefits. Pursuant to the laws and regulations governing the issues before this court, Plaintiff must show that Ms. Padilla had a disability that began prior to December 31, 1990 and continued, without any lapse, until at least September of 1993.

13.   It is undisputed that Ms. Padilla had, *inter alia*, two severe impairments during here life.  Ms. Padilla died of breast cancer.  Many years earlier she suffered an on the job injury and hurt her back.  The issue is when and if these impairments were disabling.

14.   Ms. Padilla was diagnosed with breast cancer March of 1995.  On April 20, 1995, Ms. Padilla, shortly after her diagnosis, underwent a modified radial mastectomy.  Her cancer was inoperable. Thus, pursuant to the Social Security Regulations, the cancer was *per se* disabling at the time of her surgery.  20 C.F.R. Sec. 404.1520(d)(1997).   In December of 1995, Ms. Padilla's cancer metastisized to the brain with carcinomatous meningitis.

15.   As discussed above, the issue is whether Ms. Padilla cancer was disabling prior to December 30, 1990.  The ALJ found that it was not.  The evidence in the record unequivocally supports the ALJ's finding.  Ms. Padilla had a mammogram on May 5, 1992.  Tr. 183.  As noted by the ALJ this "mammogram postdated the expiration of her disability insured status by almost a year and a half and

7

nothing in the record suggests that the mammogram was in the least abnormal." Tr. 23.  The record has no reference to any further tests or treatment as a result of this mammogram.  The record does show that Ms. Padilla told her physician on April 3, 1995 that she had a "mass" for approximately one year.  Tr. 183.  Further it was a change from her mammogram in 1992 which was found in 1995 that prompted further tests and her cancer diagnosis.  Id.

16.    Plaintiff argues that the above medical evidence is ambiguous and thus the ALJ erred in not obtaining medical expert advice.  The ALJ considered, in great detail, this issue.  His analysis is correct.  The Tenth Circuit has adopted the rule that an ALJ must consult with a medical expert if the medical evidence concerning the onset of a disability is ambiguous.  Reid v. Chater, 71 F.3d 372(10th Cir. 1995).  The ALJ specifically referred to SSR 83-20 which addressed when the ALJ must obtain the advice of a medical expert in cases of malignant neoplastic disease.

> To establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy (and where prior evidence is nonexistent) requires a medical judgment by a physician.

SSR 83-20; Tr. 15.

17.    In this case there is unambiguous, prior evidence that Ms. Padilla did not have cancer in May of 1992.  There is no evidence in the record that after her mammogram in May of 1992, that she had any treatment or care based on the results of her May of 1992 mammogram.  This evidence clearly demonstrates that Ms. Padilla

did not have any signs of cancer a year and half after her disability insured status ended.  The ALJ did not err in not consulting with a medical advisor on this issue.

18.   Plaintiff further asserts that the substantial evidence does not support a finding that Plaintiff's back condition improved. In 1985 and 1986 the medical evidence shows that Ms. Padilla had back pain, limited low back motion, muscle spasm and diminished left ankle and plantar reflexes.  Tr. 218-220.  However, she had no sensory losses or muscle weakness.  Id.  Based on these records the ALJ found that "Ms. Padilla plainly had much pain and incapacitation from her back condition at least as late as January 1986."  Tr. 36. Her treating physician at that time, Dr. Altman, wrote that if Ms. Padilla did not have surgery she would never return to "gainful activity."  Tr. 220.  She did not have back surgery.  There is evidence in the record that Ms. Padilla believed that the risks of surgery may have outweighed the potential benefits of the surgery. Tr. 37.  There is also evidence in the record that Plaintiff continued to see Dr. Altman until some time in 1989.  Tr. 39. There are no medical records from Dr. Altman after 1986.

19.   Later medical records demonstrate that Ms. Padilla's condition improved.  The reflex abnormalities that Ms. Padilla had in January of 1986 were not present by 1994.  Tr. 131, 190, 218-220. Further, in 1994 Ms. Padilla did not have any neurological deficits. Tr. 194.  Dr. James B. Farrell, examined her in January of 1995. Tr. 189.   He found that Ms. Padilla had "[n]o associated

neurological symptomatology" and that "he did not come away with a sense of true radiculopathy."  Tr. 189.

20.   Dr. Deming performed a consultative examination of Ms. Padilla in November of 1994.  Although she had muscle spasm in 1985, it was not a problem for her in 1994 or early 1995.  In 1986 there is evidence that the Plaintiff had trouble getting out of bed.  However in 1994 she had no difficulty getting on and off the examination table during Dr. Deming's examination.   Tr. 130.  Further, Ms. Padilla's complaints to her physicians show marked improvement.  In 1985 and 1986 she told her physicians that her pain was persistent, she could not sleep and that she needed to lie down during the day.  Tr. 219.  In her examination with Dr. Deming and Dr. Farrell she reported that her back bothered her "episodically."  Tr. 189.  Further, her medical records from 1993 to 1995 further show that Ms. Padilla rarely complained or sought treatment for back pain.  Tr. 185-201.  In July of 1994, Ms. Padilla told her physician that her back had been sore for one day. Tr. 198.  On April 12, 1995 she told Dr. Gopal Reddy that she felt "fairly well" and that she had no trouble sleeping. Tr. 165.

21.   Again, Plaintiff asserts that the ALJ erred in not obtaining the opinion of a medical advice in considering the medical evidence of Ms. Padilla's back condition.  Plaintiff argues that a medical advisor was need to explain Dr. Altman's findings.  Dr. Altman provided some analysis regarding these findings.  Further, the ALJ found that at this time Ms. Padilla probably was disabled

at this time.  Further, the more relevant findings time-wise, were those of Dr. Deming in 1994.  Dr. Deming fully explained Ms. Padilla's functional abilities in the Medical Source Statement of Ability To Do Work-Related Activities.  Tr. 138-139.

22.  Plaintiff further asserts that the ALJ erred in weighing the vocational evidence.  A vocational expert, Anita Miller, testified at the hearing.  Her testimony conflicted with the occupational listing in the Dictionary of Occupational Titles (DOT).  Instead of seeking clarification from Ms. Miller the ALJ submitted interrogatories to another vocational expert, Pamela Bowman.  Plaintiff argues this is error and cited Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999).  The ALJ addressed this issue in his opinion.  He wrote that rather than ask the Ms. Miller to clarify the inconsistency of her testimony with the DOT, he chose to obtain the opinion of another vocational expert.  Tr. 61.  The Tenth Circuit decision relied on by the Plaintiff supports the ALJ's decision.  In that case the Tenth Circuit noted that the ALJ has a duty to fully develop the record.  Haddock, 196 F.3d at 1089.  Further the ALJ must "establish the predicate facts for his conclusions."  Id.  Thus, the court reasoned, when a vocational expert's testimony conflicts with the DOT, the ALJ has a duty to "investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Id.  In this case, the ALJ did not

11

rely on the testimony of Ms. Miller.  In this case, the ALJ did "establish the predicate facts for his conclusion" in submitting interrogatories to Ms. Bowman.  The ALJ sufficiently met the requirements of Haddock.

23.   Further, Plaintiff appears to argue that the ALJ should not have relied on Ms. Bowman's responses because he did not accept the responses as all true.  There is no such requirement.  Further, the ALJ specifically wrote in his opinion why he did not find that Ms. Padilla could perform two of the three jobs that Ms. Bowman identified. Tr. 64.  Further there is no error in the ALJ finding that Ms. Padilla could have worked as an assembler which is considered light work.  The ALJ specifically found that Ms. Padilla had the ability to perform "some light jobs."  Tr. 71.

24.   Finally Plaintiff asserts that the ALJ erred in his credibility finding.  The decision demonstrates clearly that the ALJ complied with the relevant law and expanded his inquiry beyond the objective medical evidence.  Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1993).   Tr. 41-49.  Pursuant to Tenth Circuit law, the ALJ considered the levels of medication, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.  Kepler v.Chater, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ specifically noted the inconsistencies in the testimony of Ms.

Padilla's relatives and what she herself told her physicians.  Tr. 45.  The ALJ properly noted that from 1993 to 1995 Ms. Padilla saw her treating physician only intermittently for back pain.  Tr. 36.  Again, properly, the ALJ noted that Ms. Padilla did not take any prescription medications.  Finally, the ALJ noted that though she curtailed some household chores, she continued to perform some of them.  Tr. 46-47, 119, 135.

    25.  Finally, Plaintiff requests that if the case is remanded Ms. Padilla's insured status should be recalculated.  The court does not recommend that this case be remanded.

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
**Don J. Svet**
**United States Magistrate Judge**